IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT JONATHEN BAILEY,

    Petitioner,               No. CIV S-06-0467 MCE GGH P

    vs.

RICHARD KIRKLAND,

    Respondent.          FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2002 conviction for first degree murder (Cal. Penal Code §§ 187, 189), felon in possession of a firearm (Cal. Penal Code § 12021(a)) and a finding that he personally used a firearm in causing the victim's death (Cal. Penal Code § 12022.53(d)). Petitioner was sentenced to 80 years to life in prison.

    This action is proceeding on the first amended petition filed August 2, 2006, which raises one claim: petitioner was denied his right to testify. After carefully considering the record, the court recommends that the petition be denied.

/////

/////

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>, 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

In this case, the California Court of Appeal issued the last reasoned opinion by a state court. Respondent's Lodged Documents D, F. Accordingly, the court considers whether the denial of this claim by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

\\\\\

\\\\\

III. Factual Background

The factual background of petitioner's offense is not particularly relevant to the claim raised in the instant petition. Nevertheless, the court will set forth the factual summary of the offense as contained in the opinion of the California Court of Appeal. After independently reviewing the record, the court finds this summary to be accurate.

> After attending their senior high school prom, Khalil Johnson (Khalil) and defendant's younger brother, David, went to several after-prom parties at the Heritage Hotel. At one of the parties, they encountered Johnnie Johnson (Johnson), who accused Khalil of talking about him. The two had words and Khalil asked Johnson step outside. Johnson refused, indicating that he would go back to jail if they fought. When Johnson continued to make remarks to Khalil, Johnson and his friends were asked to leave the party and they complied. A few minutes later, Khalil and David also left.
>
> Khalil and David drove to defendant's apartment where they told defendant of the confrontation with Johnson. Defendant dressed and the trio returned to the Heritage Hotel. While they were standing in a hallway, they were approached by Johnson who asked Khalil if he was still "tripping" over their previous encounter. Khalil and Johnson agreed that everything was "cool" and the two shook hands.
>
> While Johnson and Khalil were speaking, defendant had been staring at Johnson. Johnson looked at defendant and said, "What's up, dog?" or "What's up, Blood?" Khalil heard defendant reply, "Ain't no dogs over here." Emilio Flores heard defendant reply, "Ain't no domuse [sic] over there, Loc;" "Loc" being "another word for a Crip or something like that." Defendant and Johnson continued to have words and defendant suggested they go downstairs. They did so and several onlookers followed.
>
> Once the group was outside the hotel, Khalil saw Johnson grab Johnson's friend, Emilio Flores, and heard him tell Flores to go to the car and get something. At the parking lot, while Khalil was looking for David, Khalil heard defendant say to Johnson something like, "[Y]ou really don't want to see me." Khalil heard a second shot and saw a "flash" coming from defendant. Khalil, David, and defendant fled and drove back to defendant's apartment. On the way, Khalil asked defendant why he had shot Johnson and defendant replied that he had only shot Johnson in the leg, intending to make Johnson cry.
>
> Fifteen-year-old Marco F. was among the group in the parking lot and heard defendant say to Johnson, whose back was to defendant, "So we got words, nigga?" Johnson turned his head and defendant shot him three times. Johnson fell and Marco ran.
>
> Rick Driggs was in the parking lot when he saw Johnson and a group of people come from the hotel. Driggs saw Johnson turn around and heard him say, "What's up now?" He then saw "someone" walk toward Johnson "without breaking a stride, just pull the gun out and [say], 'This is what a Crip is.'" The

4

      person then fired shots at Johnson.

      Johnson was shot four times-in the back of the head, in the arm, in the chest, and in the shoulder. The wounds to the head and chest were fatal.

      Defendant was arrested in St. Louis, Missouri on June 2, 2000. While being transported back to Sacramento by Detective Toni Winfield, defendant admitted being told by Khalil and David about their encounter with Johnson. However, defendant denied leaving with them and going to the Heritage Inn. Winfield told defendant that his live-in girlfriend had said that he had left the apartment with Khalil and David and that his girlfriend "is not a person who wants to railroad you or do anything to you because she cares about you." Defendant replied, "Right."

      Defendant presented no evidence.

Respondent's Lodged Document D, pp. 2-4.

III. <u>Discussion</u>

The background to petitioner's claim is as follows.

On Thursday August 1, 2002, shortly before the close of evidence, petitioner's counsel told the court that petitioner did not want to testify:

      Defense Counsel: Just for the record, my client has made a decision here not to testify in this case. So I think I told him that he does have a constitutional right to testify if he wants to, and he's elected not to.

      Court: Mr. Bailey, you understand that that decision is yours. Mr. McEwan can give you advice on it, but the final decision is yours whether or not you testify. Do you understand that?

      Petitioner: Yes.

RT at 189-190.

Later that day, the prosecution presented its final witness and rested. RT at 195-203. The defense rested its case without presenting any evidence. RT at 203. The court then dismissed the jury so that it could address jury instructions. RT at 203. On August 2, 2002, the court conducted an off the record jury instruction settlement conference. RT at 209-209. On August 1, 2002, petitioner waived his right to be present during the instruction settlement conference. RT at 209.

Court reconvened one week later on Monday August 12, 2002. RT at 210. The court discussed the jury instructions with the prosecutor and defense counsel. RT at 210-213.

The court then called the jury into the courtroom and instructed the jury with the applicable general principles of law and the applicable law relating to the pending charges. RT at 215-238. The court did not instruct the jury at that time with general advisements regarding how the jurors should undertake their deliberations. RT at 274-278. After giving these instructions, the court told the jury that it could take a fifteen minute break which would be followed by closing arguments. RT at 238.

During this break, defense counsel told the court that petitioner wanted to testify:

> Counsel: I apologize for the inconvenience. My client just informed me that he would like to testify in this trial. So we would ask to re-open. I understand–I informed that to the Court. The Court, as I understand, would not allow us to do that.
>
> My client indicated–I had a discussion with my client on Thursday about testifying. At that time, I thought he had indicated that he didn't want to testify. We were going to try to get together Friday. I couldn't. I was in a prelim. And I don't know, I guess maybe there was a mistake in our communication, but I thought he wasn't going to testify.

RT at 239.

Petitioner then told the court,

> Last week, I think our last date was Thursday. And me and my attorney was discussing the fact if I was going to take the stand or not. He told me I had the weekend to decide, the week to decide, and he'd come and see me that following week. He came to see me in a week. And I still wasn't, didn't know if I was going to take the stand.
>
> He told me he would come and see me by Friday. I made my decision Friday. He didn't come. Today, I wanted to get on the stand. I made my decision. And I was going to let him know that, but he never did come down. What I'm saying today when I came in, the first thing I told him, I would have got on last week, but he told me I had all week to decide if I was going to get on or not.

RT at 239-240.

The court then denied petitioner's request to testify:

> All right. The request to re-open is denied. The court has already instructed the jury as to the elements of the crimes. The defendant was explained–it was explained to Mr. Bailey that he had the option to testify. He elected not to. And I think the record reflects that. So we'll proceed.

RT at 240.

On Friday January 17, 2003, the court heard petitioner's motion for a new trial based on the trial court's denial of his request to testify. At the beginning of the hearing, petitioner's new counsel stated that he intended to call petitioner's trial counsel as a witness. RT at 308. However, trial counsel did not testify because petitioner refused to waive his attorney-client privilege for the hearing. RT at 310. Petitioner's new counsel then argued the new trial motion based on the record. RT at 310-312.

The court then denied the new trial motion:

> Mr. Higgins [petitioner's counsel] has correctly stated the law. The defendant has an absolute right to testify if he wishes. He must timely assert this right. It is his right to assert or to waive. And, in Mr. Bailey's case, he waived it, and then he had a change of heart after the jury had been instructed.
>
> I must disagree with Mr. Higgins that this is not simply a matter of convenience. Settling jury instructions is not a simple task. There are complicated and sophisticated aspects of the law that have to be considered, particularly in a homicide case. The settling of instructions is an extremely important phase of the trial, and many of the instructions are interlinked so that to change one is to change many. So it is not simply a matter of reading a couple of new instructions or informing the jury to disregard other instructions. Particularly, when the testimony may assert a new defense, may require instruction on lesser included offenses that were not previously contemplated. Obviously, if this decision to testify is made before the instructions are read, then that decision must be honored and the request must be granted. But that was not the situation here.
>
> Whatever Mr. Bailey had in mind when he changed his mind, whatever strategy he wished to employ is not for me to speculate about. But his request was not timely made, and, therefore, it will be denied.

RT at 314.

The California Court of Appeal denied petitioner's claim for the following reasons:

> Defendant claims the court's denial of his request to reopen was an abuse of discretion. We disagree.
>
> In People v. Christensen (1890) 85 Cal. 568, relied upon by the People in support of the court's ruling, the defendant contended "that the court erred in not permitting the defendant to testify in her own behalf when she desired to do so." (Id. at p. 570.) The court's sole discussion of the issue was the following response: "The evidence had all gone to the jury, and the court had proceeded with its charge to that body as to the law governing the case, when this offer was

7

made. It thus became discretionary with the court to grant or refuse the request, and we cannot declare that its action was an abuse of discretion." (Ibid.)

The People urge that the present case is in the same posture as Christensen, supra, 85 Cal. 568, namely, defendant's request to reopen came after the evidence had been given and the jury instructed. Thus, the People conclude, pursuant to stare decisis (see Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455), we are bound to follow Christensen and uphold the trial court.

Defendant argues that stare decisis is not applicable in these circumstances since Christensen, supra, 85 Cal.568, is of doubtful authority because it is 115 years old, and thus rendered at a time when circumstances were different; Christensen was decided before the United States Supreme Court developed the main body of decisional law regarding a criminal defendant's right to testify; and subsequent cases from the California Supreme Court have set forth factors for a court to consider in determining whether to reopen a case.

The first two reasons are not persuasive because, in and of itself, the age of the case is immaterial, and absent a ruling by the United States Supreme Court "squarely overruling" the issue set forth in Christensen, supra, 85 Cal.568, we are bound by all decisions of the California Supreme Court (People v. Rooney (1985) 175 Cal.App.3d 634, 644). However, it can be reasonably argued that because subsequent cases from the California Supreme Court have set out a detailed analysis, as shown below, to be considered by a trial court in deciding whether to reopen a case, Christensen's conclusory treatment of the issue may have rendered that case insignificant.

However, given the circumstances of this case we need not determine whether Christensen, supra, 85 Cal. 568, remains viable because even under recent California Supreme Court authority defendant has failed to show an abuse of discretion.

"In determining whether a trial court has abused its discretion in denying a defense request to reopen, the reviewing court considers the following factors: '(1) the stage the proceedings had reached when the motion was made; (2) the defendant's diligence (or lack thereof) in presenting the new evidence; (3) the prospect that the jury would accord the new evidence undue emphasis; and (4) the significance of the evidence.'" (People v. Jones (2003) 30 Cal.4th 1084, 1110, quoting People v. Funes (1994) 23 Cal.App.4th 1506, 1520.)

As to the stage the proceedings had reached at the time defendant made his request to testify, the court had not only instructed the jury on the elements of the charged offenses (first or second degree murder), but the court had detailed the type of evidence that was missing which would have required the court to give manslaughter instructions. Although defendant did not make an offer of proof regarding the substance of his testimony, the circumstances were now ripe for defendant to tailor his testimony to fit the manslaughter circumstances described by the court.

Regarding defendant's diligence in presenting his request to testify, defendant informed the court that he had not made his decision to testify until Friday,

8

> August 9; however, his counsel had failed to meet with him that day as counsel stated he would. Defendant knew that he would be in court on August 12, the next scheduled court date, but made no attempt to contact either counsel or the court with his request. When court reconvened the morning of August 12, the court immediately informed defendant and his counsel that the court intended to read the stipulation regarding Detective Winfield's testimony to the jury, that it would pre-instruct the jury, that it would then take a 10-minute break after which argument would commence. If defendant had truly wanted to testify, as he claimed, he could have told the court at that time, but he did not. Instead, defendant waited until after the court had pointed out the type of evidence that was missing, which would have required the court to give manslaughter instructions, had read the stipulation, and had pre-instructed the jury. Only then did defendant inform the court that he had wanted to testify earlier. Quite clearly, defendant's request was not diligently undertaken.
>
> Finally, since defendant did not make an offer of proof specifying the substance of his testimony, there was no way for the court to assess whether the jury would accord the new evidence undue emphasis or to determine the significance of the new evidence. [Footnote omitted.]
>
> Defendant argues that no prejudice would accrue from reopening the case because he would either have testified that he was not present, admitted to being present but denied being the shooter, or admitted being the shooter, but shot because he or someone else had been threatened. Thus, according to defendant, reopening would have resulted in minimal inconvenience to the court in reinstructing the jury or to the prosecutor in arguing. We are not persuaded. Without an offer of proof specifying in detail defendant's proposed testimony, it is impossible to determine the impact on the court or the prosecutor or the jurors of that testimony. Consequently, defendant has failed to demonstrate the court abused its discretion in denying his request to testify.

Respondent's Lodged Document D, pp. 6-10.

"The right of an accused to testify in his own defense is well established, and is a 'constitutional right of fundamental dimension.'" United States v. Pino-Noriega, 189 F.3d 1089, 1094 (1999) (quoting United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993); Rock v. Arkansas, 483 U.S. 44, 51, 107 S.Ct. 2704 (1987). "The right is personal, and 'may only be relinquished by the defendant, and the defendant's relinquishment of the right must be knowing and intentional.'" Id. (quoting Joelson, 7 F.3d at 177).

"The right [to testify] 'may' in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' [citation omitted.] But restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are

9

designed to serve." Rock v. Arkansas, 483 U.S. at 55-56, 107 S.Ct. at 2711 (quoting Chambers v. Mississippi, 410 U.S. 284, 295 (1973)).

In upholding the lower court's decision denying his motion to testify, the California Court of Appeal applied the four part test set forth in People v. Jones, 30 Cal.4th 1084, 1110 (2003): 1) stage of the proceedings the request is made; 2) defendant's diligence in presenting the request; 3) prospect that the jury would accord new evidence undue emphasis; and 4) significance of the evidence.

The four part test set forth in People v. Jones, supra, encompasses the concerns discussed by the Supreme Court in Rock v. Arkansas, supra, for considering requests to testify, i.e. the legitimate interests in the criminal trial process as well as the defendant's fundamental right to testify. In this case, the consideration of these concerns by the California Court of Appeal was not unreasonable.

In particular, the Court of Appeal found that the request was not timely because it was made after jury instructions regarding substantive law and the elements of the offense had been read. See also United States v. Jones, 880 F.2d 55, 60 (8th Cir. 1989) (limiting testimony to the evidence phase of the trial "promotes both fairness and order in trials, interests which, of course, are crucial to the legitimacy of the trial process."). The California Court of Appeal further found that petitioner's request was not diligently made because he did not make the request at earlier opportunities. Also, the California Court of Appeal found that petitioner had made no showing regarding the significance of his testimony.

But perhaps the most cogent reason for denying the request to reopen for petitioner's testimony was the disingenuous nature of the request coupled with its manipulative aspects. Despite the fact that petitioner was directly addressed by the court on the subject of his testifying after his attorney told the court: "my client has made a decision here not to testify," RT 189, petitioner never even hinted that such was not true, or that he was undecided in any way. He merely stated that he knew the final decision to testify was his. RT 190. For him to come

back in court and relate that he had never made such a decision simply shows a capacity for mendacity.  As respondent and petitioner point out as well, petitioner's newly found desire to testify came right after the judge had told the defense about the lack of factual support for any manslaughter instruction.  One can almost see petitioner's brain "wheels turning" to see what could be made up for those lack of facts.

The reasoning of the trial court, and the appellate court in affirming the trial court, was not AEDPA unreasonable in the least.

For the reasons discussed above, the court recommends that petitioner's claim that the trial court improperly denied his request to testify be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 03/14/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

bai467.157